IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Crim. No. 4:16-CR-0006-2 |
| | : | |
| v. | : | (Judge Brann) |
| | : | |
| ANTOINE PARIS DAVIS, | : | |
| | : | |
| Defendant. | : | |

**MEMORANDUM**
July 6, 2016

**I. INTRODUCTION**

On January 14, 2016, Defendant Antoine Paris Davis (hereinafter "Mr. Davis") and Co-Defendant Raheem Ruley (hereinafter "Mr. Ruley")[1] were charged with conspiracy to distribute cocaine and 100 grams or more of heroin, in violation of 21 U.S.C. § 846 and with one count of possession with intent to distribute 100 grams or more of heroin and cocaine, in violation of 21 U.S.C. § 846(a)(1).[2] Mr. Ruley was also charged with three counts of distribution of cocaine.[3]

On March 1, 2016, Mr. Ruley, through his counsel, filed a motion to sever[4] and a motion to suppress[5] evidence discovered after the execution of a search warrant obtained on June 15, 2015.  Mr. Ruley's motions were both denied by this

---

[1] All references to ECF documents refer to Docket Number 4:16-cr-00006.
[2] ECF No. 1.
[3] *Id.*
[4] ECF No. 40.
[5] ECF No. 38.

1

Court on April 15, 2016.[6] Mr. Davis has since filed a motion to sever[7] and a motion to suppress.[8] In accordance with the following analysis, Mr. Davis' motions are both denied.

## II. BACKGROUND

On three separate occasions between June 3 and June 16, 2015, Pennsylvania State Police troopers conducted controlled purchases of cocaine from Mr. Ruley. These controlled drug purchases were coordinated by an undercover trooper after receiving information from a confidential informant that the substances could be purchased from a suspect known as "Ant." Prior to the third controlled purchase, the undercover trooper obtained a search warrant from a state magisterial district judge for 321 Tinsman Avenue, Williamsport, Pennsylvania, the home which Mr. Ruley was seen exiting prior to the controlled drug purchases. The search warrant was contingent on Mr. Ruley exiting 321 Tinsman Avenue immediately prior to the third controlled drug sale and delivering cocaine to an undercover trooper. The third controlled drug purchase occurred as planned and Mr. Ruley was duly arrested.

After the arrest, investigators executed the anticipatory search warrant at 321 Tinsman Avenue. The search of the residence yielded two safes containing evidence of drug trafficking. One safe contained four ounces of heroin, sixteen

---

[6] ECF No. 57.
[7] ECF No. 60.
[8] ECF No. 64.

bags of cocaine, bags containing approximately eleven grams of cocaine powder, packing materials, and a digital scale. The second safe, found in Mr. Davis' room, contained $1,000 in currency, including the prerecorded funds used by the undercover trooper to purchase cocaine from Mr. Ruley on June 10, 2015, six caliber rounds, and a small bag of cocaine.

In a kitchen drawer, investigators recovered Mr. Ruley's wallet, which contained his Pennsylvania identification card and $380 in cash. Also in the drawer, investigators recovered plastic bags containing crack cocaine and vials of marijuana. In a bedroom, investigators found identification connecting Mr. Davis to the 321 Tinsman Avenue residence and various Lycoming County court documents bearing Mr. Davis' name. The owner of the property also reported that Mr. Davis resided at the residence and paid the rent. A key to the residence was found on Mr. Davis' person at the time of the search. Witnesses reported that Mr. Ruley occupied one of the bedrooms in the residence. In that bedroom, investigators found two digital scales, 9mm and .38 rounds, and records in the name of a person identified by the property owner as a former occupant in the home.

Mr. Davis' cell phone was also recovered during the search. Mr. Davis' phone uncovered calls and texts with the cell phone that the confidential informant and undercover trooper called to set up the controlled drug purchases which

resulted in Mr. Ruley's arrest. Text message conversations between Mr. Davis and Mr. Ruley and other individuals included discussion of heroin transactions and other drug distribution activities.

## III. DISCUSSION

### A. Motion to Suppress

In denying Mr. Ruley's motion to suppress,[9] this Court held that the anticipatory search warrant issued for the search of 321 Tinsman Avenue was valid.[10] Mr. Davis, in his motion to suppress, argues that, while the search warrant was validly issued, it was not validly executed. Specifically, Mr. Davis argues that upon entering the residence, law enforcement was informed that the home contained multiple dwelling units. At that point, law enforcement could no longer rely on the warrant to justify a search of the entire residence. Mr. Davis seeks to have the items recovered in his room, identified as room #5, suppressed because law enforcement lacked probable cause to search it.

The government, conversely, argues that the valid search warrant authorized law enforcement to search the entire premises. It further opposes Mr. Davis' categorization of 321 Tinsman Avenue as a "multi-dwelling residence" and instead contends that this residence was a traditional single-family house.

---

[9] ECF No. 38.
[10] ECF No. 56.

Both parties cite to *Maryland v. Garrison*[11] and *U.S. v. Ritter*[12] in support of their arguments. In *Garrison*, law enforcement secured a valid warrant to search a third floor apartment.[13] The officers discovered that the third floor was in fact divided into two separate apartments after they found contraband in the neighboring apartment.[14] The United States Supreme Court held that "if the officers had known, or even if they should have known, that there were two separate dwelling units . . . , they would have been obligated to exclude respondent's apartment from the scope of the requested warrant."[15] The Court concluded that the search was nonetheless valid because the officers' failure to realize the overbreadth of the warrant was objectively understandable and reasonable under the circumstances.[16]

In *Ritter*, law enforcement executed a warrant to search a single-family house that was later determined to have been divided into multiple dwellings.[17] The United States Court of Appeals for the Third Circuit remanded the case to the District Court for further fact-finding to determine what evidence was discovered

---

[11] 480 U.S. 79 (1987).
[12] 416 F.3d 256 (3d Cir. 2005).
[13] *Garrison*, 480 U.S. at 81.
[14] *Id.*
[15] *Id.* at 85.
[16] *Id.* at 88.
[17] *Ritter*, 416 F.3d at 259.

before and what evidence was discovered after the officers realized that the house had multiple dwelling units.[18]

These cases, while instructive, however, are not directly applicable to the matter at hand. The valid search warrant granted law enforcement the authority to search the property at 321 Tinsman Avenue, which was assumed to be a traditional, single-family home. Upon entering the residence, law enforcement were informed that Mr. Davis and his girlfriend, Angelie Lopez, shared the master bedroom and that Mr. Ruley and Hakeem Price, another adult present during the search, each had a room in the home. Nothing in the record indicates that these rooms were separate dwellings. In fact, it seems that Mr. Davis, the lessee of the entire premises, allowed Mr. Ruley, Mr. Price, and Ms. Lopez to reside there. While Mr. Davis may have had roommates, this fact does not convert the single-family home into an apartment house or multi-unit dwelling.[19] Thus, law enforcement's execution of the search warrant was lawful.

## B. Motion to Sever

In his motion to sever, Mr. Davis contends that Mr. Ruley, his co-defendant, has agreed to testify on his behalf but only if separate trials are ordered, as Mr. Ruley does not wish to take the stand in his own trial. The Government opposes the request, arguing that there is no reason to believe that Mr. Ruley will actually

---

[18] *Id.* at 267.
[19] *See Durham v. McElynn*, 254 Fed. Appx. 892, 896 (3d Cir. 2007).

testify at trial and that, even if he did, his testimony would not be in any way exculpatory and would be easily impeached.

Federal Rule of Criminal Procedure 8 provides that two or more defendants may be charged under one indictment "if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses."[20] Joint trials are generally favored in that they "conserve state funds, diminish inconvenience to witnesses and public authorities, and avoid delays in bringing those accused of crime to trial."[21] A transactional nexus must exist, however, before joinder of defendants in a multiple-defendant trial is proper.[22]

Typically, defendants jointly indicted should be tried together to conserve judicial resources, especially where the same evidence would be presented at both trials.[23] Federal Rule of Criminal Procedure 14, however, provides that a court may order separate trials when a proper joinder "appears to prejudice a defendant . . ."[24] In determining prejudice, "[t]he proper question on appeal is whether the jury could have been reasonably expected to compartmentalize the allegedly prejudicial evidence in light of the quantity and limited admissibility of the

---

[20] Fed. R. Crim. P. 8(b).
[21] *U.S. v. Jimenez*, 513 F.3d 62, 82 (3d Cir. 2008) (citing *United States v. Lane,* 474 U.S. 438, 449 (1986)).
[22] *Jimenez*, 513 F.3d at 82-83 (citing *United States v. Irizarry,* 341 F.3d 273, 287 n. 4 (3d Cir. 2003)).
[23] *U.S. v. Eufrasio*, 935 F.2d 553, 568 (3d Cir. 1991) (citing *U.S. v. Sandini,* 888 F.2d 300, 306 (3d Cir.1989), *cert. denied,* 494 U.S. 1089 (1990); *United States v. De Peri,* 778 F.2d 963, 984 (3d Cir.1985), *cert. denied,* 475 U.S. 1110 (1986)).
[24] Fed. R. Crim. P. 14(a).

evidence."[25] "Neither a disparity in evidence, nor introducing evidence more damaging to one defendant than others entitles seemingly less culpable defendants to severance."[26]

Whether to sever is a determination within the sound discretion of the trial judge.[27] In making the determination, the trial judge must consider what trial developments are foreseeable at the time the motion to sever is made.[28] Even if a judge is found to have abused his discretion in denying a motion to sever, a conviction will not be overturned unless the appellant meets the "heavy burden" of demonstrating "clear and substantial prejudice resulting in a manifestly unfair trial."[29]

Mr. Ruley has filed what has been described as an affidavit of truth indicating the following:

> I Raheem Jarmar Ruley states that there was never any agreement between Antoine Paris Davis and I to distribute drugs to anyone. Antoine Paris Davis was not involved in any way, shape or form with drug activity nor did he have knowledge it. Antoine Paris Davis also did not receive any U.S. currency from me as a result of drug activity which involved Pennsylvania State Trooper Ryan S. Kelly on June 10, 2015, as I put all of the U.S. currency that I received in my wallet. I will testify on behalf of Antoine Paris Davis in a severed trial. However, I will not testify in a joint trial.[30]

---

[25] *Eufrasio*, 935 F.2d at 568 (quoting *U.S. v. De Peri*, 778 F.2d 963, 984 (3d Cir. 1985))
[26] *Eufrasio*, 935 F.2d at 568 (citing *United States v. Sebetich,* 776 F.2d 412, 427 (3d Cir.1985), *cert. denied,* 484 U.S. 1017 (1988)).
[27] *U.S. v. Reicherter,* 647 F.2d 397, 400 (3d Cir. 1981)
[28] *See Eufrasio*, 935 F.2d at 568.
[29] *Eufrasio*, 935 F.2d at 568.
[30] ECF No. 60-1.

8

The Government also asserts that Mr. Ruley has expressed a desire to plead guilty to the conspiracy count of the indictment, with the following qualification: he will plead guilty to conspiring "with others," but not with Mr. Davis.[31]

In determining whether to "grant a severance on the ground that a joint trial would deprive the movant of the ability to call a codefendant as a defense witness,"[32] a court must consider the following factors:

> (1) the likelihood of co-defendant's testifying; (2) the degree to which such testimony would be exculpatory; (3) the degree to which the testifying co-defendants could be impeached; (4) judicial economy.[33]

First, a defendant seeking a severance on the basis that a co-defendant will testify on his behalf must show a likelihood that the co-defendant will actually testify.[34] Courts have consistently held that "[b]are assertions that co-defendants will testify are insufficient" to warrant separate trials.[35] The movant, however, need not show that the co-defendant is "certain" to testify but must show that he is "likely" to testify.[36]

---

[31] ECF No. 66 at 15.
[32] *U.S. v. Kozell*, 468 F. Supp. 746, 748 (E.D. Pa. 1979) (citing *U.S. v. Boscia*, 573 F.2d 827 (3d Cir. 1978)).
[33] *Boscia*, 573 F.2d at 832.
[34] *Id.*
[35] *Id. See also Kozell*, 468 F. Supp. at 748 (co-defendant's counsel indication, in unsworn testimony, that if co-defendant's trial was held before defendant's trial and if co-defendant was convicted, he "would probably be willing to testify on behalf of" defendant was insufficient to show that he was "likely" to testify); *U.S. v. Schuler*, 1997 WL 83744 (E.D. Pa. Feb. 21, 1997)(movant arguing that co-defendant could be "compelled to testify" and indicating his intention to call co-defendant as a witness in the hope that he would furnish exculpatory testimony was insufficient to meet the first *Boscia* factor. Defendant's motion was based on the following statement made by co-defendant after their arrest: "Man, what are you doing here? You ain't a part of this … stay strong … I'll even testify to that you didn't have nothing to do with this.").
[36] *Kozell*, 468 F. Supp. at 748 (citing *U.S. v. Echeles*, 352 F.2d 892 (7th Cir. 1965)).

As stated above, Mr. Davis has provided an affidavit by Mr. Ruley indicating that he would testify on his behalf if severance were granted. The Government argues that, even if Mr. Ruley decides to plead guilty, he would still retain a privilege against self-incrimination throughout the presentence, sentencing, and appeals phases of his case and he would, therefore, be unlikely to actually testify on Mr. Davis' behalf. The Government further cites *Kozell* for the contention that the first *Boscia* factor is not met when the co-defendant places condition on his willingness to testify.[37]

I believe that Mr. Davis has made a sufficient showing that Mr. Ruley would be likely to testify on his behalf if severance were granted. Mr. Davis has submitted a notarized affidavit[38] by Mr. Ruley indicating that he would testify on Mr. Davis' behalf if severance were granted.[39] Through this affidavit, Mr. Ruley already incriminates himself, a fact that weighs against the Government's argument that he is unlikely to testify because he retains his right to silence in the other phases of his case. Mr. Ruley has further expressed an interest in pleading guilty. His only condition is that he agrees that he conspired with "others" instead

---

[37] *Kozell*, 466 F. Supp. at 748.
[38] The Government argues that suspicious circumstances mark Mr. Ruley's affidavit because it does not contain the customary attestation that the affidavit was subscribed to and sworn before the notary and because Mr. Ruley's signature is not immediately evident on the document, although his initials are. Mr. Davis, however, through his counsel, provides the contact information for Sara Schraeder, the Notary Public assigned to the Columbia County Prison who attested to Mr. Ruley's affidavit, and indicates that the attestation also occurred in the presence of Correctional Officer Brad Hipps. Consequently, this Court is satisfied that the affidavit is authentic.
[39] *See U.S. Ditizio*, 530 F. Supp. 175, 177 (E.D. Pa. 1982) ("Obviously, had [defendant] submitted an affidavit by his co-defendant indicating that [co-defendant] intended to waive his privilege against self-incrimination, appear as a witness on [defendant's] behalf, and repeat at a second trial the substance of the exculpatory statement he made to Government agents, the first Boscia consideration would be satisfied.")

of with Mr. Davis specifically. No evidence is presented to this Court that Mr. Ruley is conditioning his guilty plea on the severance of these cases. Therefore, the only condition Mr. Ruley has set forth is in regard to his own guilty plea, not his willingness to testify on Mr. Davis' behalf. Furthermore, Mr. Davis need not show that Mr. Ruley is *certain* to testify on his behalf and must only show that he is *likely* to testify on his behalf. Accordingly, Mr. Davis has met the first prong of the *Boscia* factors.

That said, Mr. Davis has failed to meet *Boscia's* three remaining prongs. Significant evidence was found in Mr. Davis' room during the search of 321 Tinsman Avenue, including a safe containing cocaine and approximately $1,000 in currency. The parties dispute whether this safe contained the prerecorded money used by the undercover trooper to purchase two bags of cocaine from Mr. Ruley on June 10, 2015 or whether the prerecorded money was found in Mr. Ruley's wallet. Exhibit 1 of Mr. Davis' brief in support of his motion to sever (a police report prepared by Trooper John Whipple) indicates, however, that the prerecorded money was seized from a safe in the master bedroom, room #5, identified as Mr. Davis' bedroom. At trial, officers would likely provide further testimony supporting this allegation. Accordingly, Mr. Ruley's testimony that the prerecorded money was in his wallet would be wholly contradicted.

In addition to the currency and cocaine found in Mr. Davis' room, his cell phone uncovered calls and texts to the phone number used by the confidential informant and the undercover trooper in arranging the controlled drug transactions. Text messages on the phone include discussions of heroin and other drug transactions between Mr. Davis and other individuals, including Mr. Ruley. Due to the abundance of evidence in support of Mr. Davis' involvement in the charged offenses, the degree to which Mr. Ruley's testimony would be exculpatory is extremely low.

Additionally, there is a significant likelihood that Mr. Ruley would be impeached if he were to testify at Mr. Davis' trial. Mr. Ruley and Mr. Davis have been cellmates throughout the pendency of this trial. The Government maintains that Mr. Davis is older than Mr. Ruley and has a criminal history which significantly increases his sentencing exposure to a mandatory minimum prison term of ten years and maximum penalty of life imprisonment. Mr. Ruley, on the other hand, has no prior convictions. Accordingly, a jury would have reason to infer that Mr. Ruley would be testifying falsely to accept full responsibility on behalf of Mr. Davis so as to allow him to avoid a potentially harsh penalty.

Lastly, concerns of judicial economy weigh against granting a severance. The evidence against both defendants is interrelated and substantial. If Mr. Ruley elects against pleading guilty and continues to trial, a severance would require this

Court to expend time and resources presiding over two trials with similar issues, evidence, and witnesses. If Mr. Ruley decides to plead guilty, he may very well decide to testify on behalf of Mr. Davis, rendering this issue moot. Regardless, the risk of prejudice to Mr. Davis is low compared to the high cost of granting the motion to sever.

## IV. CONCLUSION

In accordance with the foregoing reasoning, Mr. Davis' motion to sever and motion to suppress are both denied.

BY THE COURT:

s/ Matthew W. Brann
Matthew W. Brann
United States District Judge