## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | No.  4:16-cr-00006-02 |
| | : | |
| v. | : | (Judge Brann) |
| | : | |
| ANTOINE PARIS DAVIS, | : | |
| | : | |
| Defendant. | : | |

## MEMORANDUM

### September 21, 2016

## I.    BACKGROUND

Shortly after Raheem Jarmar Ruley exchanged cocaine for cash with an undercover Pennsylvania State Police trooper in June 2015, officers searched the Williamsport, Pennsylvania dwelling he shared with Antoine Paris Davis. Once inside, officers allegedly discovered, among other evidence, drug paraphernalia and suspected drug proceeds intermingled with Mr. Davis's personal belongings, in addition to incriminating text messages on Mr. Davis's cell phone.

A federal grand jury indicted the pair on various drug possession, drug distribution, and drug conspiracy charges, after which the two were imprisoned

together at a state correctional facility in Columbia County. During that period of incarceration, Mr. Ruley purportedly authored his so-called "Affidavit of Truth," a one-page, penciled document in which he accepted complete responsibility for the instant offense conduct and wholly denounced the Government's suggestion that Mr. Davis was ever complicit in the alleged drug enterprise.

As informal plea discussions broke down, however, Mr. Ruley abruptly changed his tune. Facing an impending jury trial, Mr. Ruley pled open to the indictment, and during the course of the associated plea colloquy, extinguished whatever glimmer of veracity his jailhouse affidavit once possessed. According to Mr. Ruley's own admission, the "Affidavit of Truth" was entirely false and was actually written not by himself but by Mr. Davis.

Even in light of Mr. Ruley having recanted the substance of the affidavit, Mr. Davis has not been of the same mind as his once co-conspirator. Vowing to proceed to trial, Mr. Davis, through his second court-appointed counsel, G. Scott Gardner, Esquire, asks the Court to rule on the pending motion in limine and to permit introduction of Mr. Ruley's now-defunct "Affidavit of Truth" at trial. Though conclusive determination of such an evidentiary proffer necessarily

depends upon certain trial-time contingencies, under the vast majority of

scenarios, the affidavit is hearsay for which no exception can adequately be

advanced. Accordingly, its use is precluded consistent with the discussion that

follows.

## II.    LAW

"A motion <u>in limine</u> is a motion made prior to trial for the purpose of

prohibiting opposing counsel from mentioning the existence of, alluding to, or

offering evidence on matters so highly prejudicial to the moving party that a

timely motion to strike or an instruction by the court to the jury to disregard the

offending matter cannot overcome its prejudicial influence on the jurors'

minds."[1] "The standard of review for the admission or exclusion of evidence is

generally abuse of discretion. If a party fails to preserve an evidentiary ruling,

this Court reviews for plain error."[2]

"In a trial by jury in a federal court, the judge is not a mere moderator, but

is the governor of the trial for the purpose of assuring its proper conduct and of

---

[1]    <u>O'Rear v. Fruehauf Corp.</u>, 554 F.2d 1304, 1306 (5th Cir. 1977).

[2]    <u>Tourtellotte v. Eli Lilly & Co.</u>, No. 15-1090, 2016 WL 146455, at *16 (3d Cir. Jan. 13, 2016).

determining questions of law."[3] Accordingly, "[a]n abuse of discretion occurs only where the district court's decision is 'arbitrary, fanciful, or clearly unreasonable'—in short, where 'no reasonable person would adopt the district court's view.'"[4] The United States Court of Appeals for the Third Circuit "will not remand or reverse if the admission or exclusion of evidence constituted harmless error."[5] "An error is harmless only if it is highly probable that the error[ ] did not affect the outcome of the case."[6] "It is the province of the trial judge to weigh any materiality against any prejudice and, unless the judge's reading is 'off the scale,' his discretion is not abused."[7]

## III.   ANALYSIS

### A.    The affidavit is hearsay under Federal Rule of Evidence 801(a)–(c).

The affidavit is hearsay because it is a "statement, other than one made by a declarant while testifying at the trial or hearing, offered in evidence to prove

---

[3]   Quercia v. United States, 289 U.S. 466, 469 (1933) (Hughes, C.J.).

[4]   Green, 617 F.3d at 239 (quoting United States v. Starnes, 583 F.3d 196, 214 (3d Cir.2009)).

[5]   Id.

[6]   Id. (internal quotations omitted).

[7]   United States v. Shelley, 405 F.3d 1195, 1201 (11th Cir. 2005).

the truth of the matter asserted."[8] A hearsay statement is inadmissible because it is "inherently untrustworthy: the declarant may not have been under oath at the time of the statement, his or her credibility cannot be evaluated at trial, and he or she cannot be cross-examined."[9]

Federal Rule of Evidence 801's definition of a "statement" encompasses a "written assertion" like the affidavit at issue here.[10] Moreover, the affidavit is hearsay because it is offered to prove the truth of the matter asserted therein— namely, that Mr. Ruley was the mastermind behind the instant drug distribution scheme and that Mr. Davis shared no involvement in the offense conduct.

Because the affidavit is hearsay under Rule 801, it is inadmissible at trial unless it meets one of the non-hearsay conditions or satisfies a hearsay exception. It does neither.[11]

---

[8]   United States v. Console, 13 F.3d 641, 656 (3d Cir. 1993).

[9]   Id.

[10]   Sours v. Glanz, 24 F. App'x 912, 912–14 (10th Cir. 2001). Accord Abraham v. Danberg, 832 F. Supp. 2d 368, 374–75 (D. Del. 2011).

[11]   Federal Rule of Evidence 802 deems hearsay inadmissible "unless [a Federal Rule of Evidence] provides otherwise."

### B.     The affidavit is not a non-hearsay statement of a co-conspirator under Federal Rule of Evidence 801(d)(2)(E).

Rule 801 enumerates certain types of statements that qualify as non-hearsay, provided that they satisfy a series of stated conditions. One such genre of non-hearsay statements is colloquially referred to as admissions by a party opponent. In certain circumstances, admissions by a party opponent can also include statements by co-conspirators. To qualify as non-hearsay under the co-conspirator category, the statement must be "offered against an opposing party" and "made by the party's coconspirator during and in furtherance of the conspiracy."[12] That provision does not apply here for several reasons.

First, the affidavit was not made "during and in furtherance of the conspiracy." "[A] coconspirator's statement is considered to be in furtherance of the conspiracy as long as it tends to promote one or more of the objects of the conspiracy."[13] As the United States Court of Appeals for the Third Circuit has explained, "Statements between conspirators which provide reassurance, serve to maintain trust and cohesiveness among them, or inform each other of the

---

[12]   Fed. R. Evid. 801(d)(2)(E).

[13]   United States v. Ciresi, 697 F.3d 19, 28 (1st Cir. 2012).

current status of the conspiracy further the ends of the conspiracy and are

admissible so long as the other requirements of Rule 801(d)(2)(E) are met."[14] In

contrast, however, statements by co-conspirators are not admissible if they

amount to no "more than 'mere narratives' of past events."[15] "Mere conversation

between conspirators or merely narrative declarations are not admissible as

declarations in furtherance of the conspiracy."[16]

Second, as to a conspiracy's duration, the Third Circuit has stated that "a

conspiracy is presumed to continue until its objective is achieved."[17] Therefore, a

conspiracy may be deemed to have concluded when the co-conspirators are no

longer "fully capable of carrying out their purpose."[18]

In light of these definitions, it is evident that Mr. Ruley's affidavit was

written after the conspiracy had ceased and merely with the intent to allocate

liability <u>post hoc</u> rather than to facilitate the needs of an ongoing enterprise.

---

[14]   <u>United States v. Ammar</u>, 714 F.2d 238, 252 (3d Cir. 1983).

[15]   <u>Id.</u>

[16]   <u>United States v. Eubanks</u>, 591 F.2d 513, 520 (9th Cir. 1979) (internal quotation marks omitted).

[17]   <u>Id.</u> at 253.

[18]   <u>Id.</u>

Mr. Ruley and Mr. Davis were both incarcerated at the time the affidavit was written, and the conspiracy that allegedly bound them together had, for all intents and purposes, ceased by that time.

Moreover, the very impetus behind the party opponent rule is that an opposing party is unlikely to make later-binding statements that weigh against its own interests. Party admissions are therefore thought to be inherently truthful. That is why this non-hearsay rule requires that the contested statement be "offered <u>against</u> an opposing party." Here, Mr. Davis seeks to introduce Mr. Ruley's statement at trial not as against Mr. Ruley, but in support of his own defense. Mr. Davis's strategy is one of exculpation rather than inculpation, a use that this non-hearsay rule does not expressly contemplate. As the Government notes, "The timing, content, background, and origin of the affidavit reveal therefore that the affidavit was nothing more than a self-serving attempt by Davis to deflect liability from himself."[19]

In addition, I also doubt the wisdom of relying on the co-conspirator prong of the party admission rule, where the subject co-conspirator has pled

---

[19]   ECF No. 115 at 7.

guilty and has been effectively terminated from the case by the time the

contested statement is sought to be introduced. The incentives for the declarant

co-conspirator to vigorously rebut the statement at issue clearly no longer exist.

Thus, I conclude that the statement does not fall within the category of

admissible non-hearsay as an admission by a co-conspirator.

### C.   The affidavit is not excepted from the hearsay rule as a statement against interest under Federal Rule of Evidence 804(b)(3).

Because the statement is hearsay, I also consider whether it falls within any

of the provided exceptions to the hearsay rules. Unlike the non-hearsay

categories, the exceptions recognize that, in some limited circumstances, hearsay

statements bear sufficient indicia of truthfulness so as to be properly admitted.

The key exception that should be considered in this case is whether the affidavit

qualifies as a statement against interests. It does not.

First, the statement against interest exception applies only to statements

made by a declarant who is "unavailable as a witness" at the time of trial.[20]

Rule 804(a) sets forth five different criteria, each of which formally makes a

witness "unavailable." A potential invocation by Mr. Ruley of his Fifth

---

[20]   Fed. R. Evid. 804(b).

Amendment privilege against self-incrimination is the only pertinent category of unavailability for our purposes here.

As a threshold matter, the Court notes that it is authorized to conduct an <u>in camera</u> review of Mr. Ruley's anticipated testimony to determine whether such testimony actually falls within the reach of that privilege. I am skeptical that much, if any, of Mr. Ruley's testimony would be covered by that privilege, as Mr. Ruley has already pled guilty and is presumably unlikely to face perjury charges based upon the falsified affidavit.

Nevertheless, even assuming Mr. Ruley's "unavailability," the affidavit fails to satisfy the substantive requirements of the statement against interest exception. Federal Rule of Evidence 804(b)(3), entitled "Statement against Interest," provides that a statement of an unavailable witness that would otherwise constitute hearsay is admissible if:

> (A)   a reasonable person in the declarant's position would have made only if the person believed it to be true because, when made, it was so contrary to the declarant's proprietary or pecuniary interest or had so great a tendency to invalidate the declarant's claim against someone else or to expose the declarant to civil or criminal liability; and

(B)    is supported by corroborating circumstances that clearly indicate its trustworthiness, if it is offered in a criminal case as one that tends to expose the declarant to criminal liability.

The so-called "Affidavit of Truth" fails both prongs. First, the statement is not the kind that a reasonable person would have made "only if the person believed it to be true." A valid and competing motivation for the affidavit is that Mr. Ruley was pressured to take the fall by a co-conspirator who faced more significant penalties due to a more extensive criminal history.[21]

Second, the affidavit is inherently untruthful. "Where the statement is offered to exculpate the accused in a criminal trial, it must be supported by corroborating circumstances that clearly indicate its trustworthiness."[22] "We assess corroboration in light of the totality of circumstances."[23] As the Third Circuit has previously held, a statement against interest does not evidence

---

[21]    See ECF No. 115 at 3 ("According to the Pretrial Services Report, Ruley, age 25, has multiple arrests, but no convictions. In contrast, Davis, age 39, has multiple convictions, including a prior felony drug distribution offense which has the effect of doubling the mandatory minimum prison term to 10 years and increasing the maximum penalty to life imprisonment.").

[22]    United States v. Caldwell, 760 F.3d 267, 289 (3d Cir. 2014) (Smith, J.) (internal quotation marks omitted).

[23]    Id.

sufficient trustworthiness if it is the product of a "self-serving attempt[ ] to

deflect criminal liability."[24]

> At his change of plea hearing, Mr. Ruley admitted the following facts:

> Following the return of the indictment on January 14, 2016, Ruley and Davis were in custody together at the Columbia County Prison. While in custody with Davis, Ruley signed a so-called "Affidavit of Truth." The affidavit, dated March 3, 2016, was prepared and written by Davis for Ruley to sign. The affidavit falsely stated that there never was any agreement between Davis and Ruley to distribute drugs to anyone and that Davis was not involved in any way with drug activity.[25]

In addition, recorded prison calls obtained by investigators allegedly captured

Mr. Ruley telling his mother that Mr. Davis's plan that the former would take full

responsibility for the instant charges was "a no go."[26] Consequently, the

circumstances of the so-called "Affidavit of Truth," are such that it is has been

entirely drained of credibility.[27] Whatever worth it once had, Mr. Ruley's plain

---

[24]  United States v. Mussare, 405 F.3d 161, 168 (3d Cir. 2005) (Cowen, J.). See also

[25]  ECF No. 115 at 4.

[26]  Id. at 2–3.

[27]  See, e.g., Caldwell, 760 F.3d at 290 ("Finally, Tigney's account changed on multiple occasions, with him ultimately recanting his admission to defense investigators. Given these circumstances, we hold that the District Court did not abuse its discretion in excluding Tigney's statements because the totality of the circumstances support its conclusion that the confession lacked the indicia of trustworthiness required by Rule 804(b)(3)").

explanation as to the deceptive motive behind the affidavit renders it

inadmissible as a statement against interest.

### D. The affidavit does not satisfy Federal Rule of Evidence 807's "Residual Exception."

For reasons similar to those set forth above, the affidavit cannot come

within Rule 807's "residual exception." That exception requires that the

contested statement have "equivalent circumstantial guarantees of

trustworthiness." Because the factual circumstances as outlined above render the

affidavit inherently untrustworthy, it does not meet the residual exception.

### E. In limited circumstances, the affidavit may be used impeach Mr. Ruley as a witness under Federal Rule of Evidence 613. Such use would open the door to the Government's introduction of Mr. Ruley's plea colloquy and other rebuttal evidence.

If Mr. Ruley testifies at trial and implicates Mr. Davis, Federal Rule of

Evidence 613 provides that he may be questioned about prior inconsistent

statements, such as his denial that Mr. Davis shared any involvement in the

instant offense conduct. However, to the extent that extrinsic evidence of those

prior inconsistent statements—namely, the affidavit at issue here—is sought to

be introduced, that same rule also requires that the opposing party be "given an

opportunity to examine the witness about it."[28] Accordingly, the Court considers

it axiomatic that in such a circumstance, the Government would be permitted to

introduce the substance of Mr. Ruley's plea colloquy and his jailhouse calls, and

to otherwise challenge the veracity of the affidavit.

## IV.    CONCLUSION

Accordingly, the Defendant's Motion in Limine to permit introduction of

the "Affidavit of Truth" at trial is denied. The affidavit is excluded consistent

with the foregoing discussion.

An appropriate Order follows.

BY THE COURT:

/s Matthew W. Brann
Matthew W. Brann
United States District Judge

---

[28] Note that the affidavit does not qualify as a non-hearsay prior inconsistent statement under Federal Rule of Evidence 801(d)(1)(A), as it was not "given under penalty of perjury at a trial, hearing, or other proceeding or in a deposition." Thus, the affidavit may be used solely for impeachment purposes and not as substantive evidence, even if presented extrinsically. Should this circumstance arise, the Court would issue an appropriate limiting instruction at that time and as part of the jury charge.