## Re: EMERGENCY MOTION-COVID-19 INFECTED PRISONER

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

FILED
SCRANTON

JAN 1 1 2021

PER _____
DEPUTY CLERK

UNITED STATES OF AMERICA,

        Plaintiff,

        vs.                         **Docket No. 4:16-CR-0006 (MWB)**

ANTOINE PARIS DAVIS,

        Defendant.

---

### DEFENDANT'S REPLY TO GOVERNMENT'S RESPONSE OPPOSING HIS MOTIONS FOR COMPASSIONATE RELEASE AND FOR THE APPOINTMENT OF CJA COUNSEL

Defendant, ANTOINE PARIS DAVIS, appearing _pro se_, submits this brief reply to the Government's opposition to his successive Emergency Motion for Compassionate Release and the appointment of counsel, brought pursuant to 18 U.S.C. 3582(c)(1)(A) and 3006A(a)(2)(B), and would show the Court as follows:

    I.     **Defendant Has Repeatedly Exhausted His Administrative Remedies**

On September 1, 2020, Defendant submitted to the Warden of his institution a written request based on both his unique susceptibility to contracting and perishing from the novel and extremely lethal coronavirus, and the permanent injury he sustained by virtue of the Bureau of Prisons' failure to provide care after he sustained an injury during a mandatory work assignment.

*See, Attachment A.* That request was placed in a secure outgoing mail receptacle located in Defendant's assigned housing unit. Only staff have access to the matter placed in that receptacle, and there is a reasonably presumption that staff took possession of the request and forwarded to the warden, who ignored the request. As of the of the filing of Defendant's successive motion, and the date of this reply, the warden has not responded to the request. More than thirty days has lapsed since Defendant submitted the annexed request, and additional requests. Thus, Defendant has satisfactorily exhausted his administrative remedies, and the Government's claim to the contrary is without a basis in fact. The Court should proceed to the merits of this motion.

**II.      FCI Fort Dix is in its Second Wave of a Coronavirus Outbreak.**

As a preliminary matter it should be noted that the Government has repeatedly downplayed the seriousness of the situation at FCI Fort Dix. The numbers of infections reported, and sometimes publicized, are almost always false and significantly underrepresent the conditions at the facility. To be sure, despite the Government's numbers set forth in its response, on December 22, 2020, out of 230 inmates assigned to a particular unit, 183 inmates were positive for the deadly coronavirus. This was due to the recent transfer of more than 250 inmates from COVID-19 ravaged FCI Elkton (Ohio) to FCI Fort Dix, where those inmates (some of whom tested positive upon their arrival at FCI Fort Dix) had been placed in general population – approximately thirty of who were assigned to the unit referenced. Indeed, members of Congress recently decried the transfers, which caused the outbreak that has resulted in Defendant's infection. *See, Attachment B.* The Court should appoint counsel, and promptly schedule a hearing to afford Defendant an opportunity to introduce evidence of the dire conditions at FCI Fort Dix which continue to present and imminent threat of death or serious bodily injury.

As the Government correctly notes, Defendant has tested positive, then negative, then positive for the deadly virus – demonstrating that Defendant has suffered, on at least one occasion, reinfection. This is due to the inability to practice social distancing at FCI Fort Dix, coupled with the institution's unbelievable practice of placing hoards of infected inmates in close confines with one another, rather than isolating them individually (as is done in the community) to allow for recovery. The Bureau of Prisons has, at least twice, failed to adhere to the Congressional mandate set forth in 18 U.S.C. 4042(a)(2) and (3), which requires it to provide Defendant with "suitable quarters," "safekeeping," "care," and "protection," from the deadly virus. Reinfection increases the likelihood of death and further weakens the immune system. For individuals like Defendant, death is almost certain.

It should also be noted that the Government, by and through the Bureau of Prisons, and on its own, has materially misrepresented the severity of Defendant's medical conditions to the Court.  For example, it has been reported that Defendant either refused to take a second medication suggested to treat his hypertension, or that he declined to have the medication prescribed. In either case, the report is false. In fact, Defendant has long since been prescribed, and takes daily, a second medication to treat his hypertension. However, despite even this second medication, Defendant's hypertension remains uncontrolled – presenting a greater threat of death or serious bodily injury in the prison environment. This Court should, thus, do as other district court have done to protect the most vulnerable class of inmates from death or serious bodily injury from the novel and exceptionally lethal coronavirus – grant the motion for compassionate release and direct the BOP to immediately release this Defendant from custody.

*See, e.g., United States v. Ivan Nunez, Docket No. 17-CR-58 (JRS)(E.D. Pa. Sept. 1, 2020)(granting compassionate release to prisoner who suffered from obesity – a COVID-19 risk factor as per the CDC); United States v. Pabon, 2020 WL 2112265, \*3 (E.D. Pa. May 4, 2020)(identifying high blood pressure as a serious medical condition and one of "the two leading comorbidities associated with increased risk for COVID-19.").*

      **III.    The 18 U.S.C.3553(a) Factors Doe Not Warrant Continued Confinement.**

The Government argues that, despite the imminent threat of death or serious bodily injury posed by both the conditions at FCI Fort Dix, and Defendant's failing health – to include his current COVID-19 infection (which resulted from gross negligence on the part of the Bureau of Prisons) – Defendant poses a danger of a sort and should not be released from custody. The Government is simply wrong. Nothing in Section 3553(a) even suggests that the Court should decline to release a prisoner who was sentenced to a definite term of imprisonment that may be transformed into a death sentence. Indeed, the parsimony clause specifically directs a court not to impose a sentence "greater than necessary." To require a Defendant to spend the rest of his life in prison, despite the imposition of a definite term of imprisonment, with a reasonable initial expectation of release into the community, would be far greater than necessary and in violation of the parsimony clause. For this reason alone, the Court should promptly issue an order directing Defendant's immediate release, lest it effectively reimposes and enlarges the sentence from a definite term to a sentence of life and/or death.

**WHEREFORE,** Defendant respectfully requests that the Court (1) appoint counsel, (2) order Defendant released on bail pending the disposition of this motion on the merits, and (3) modify the term of imprisonment by reducing that term to "time-served," in the interest of justice.

Dated: Fort Dix, New Jersey
**December 24, 2020**

Respectfully submitted,

/s/ *Antoine Paris Davis*

**ANTOINE PARIS DAVIS**
**REGISTER NO. 74600-067**
**F.C.I. FORT DIX (WEST)**
**P.O. BOX 2000**
**JOINT BASE MDL, NEW JERSEY 08640**

**CERTIFICATE OF SERVICE**

This shall serve to certify that the undersigned has served/caused to be served upon the Office of the United States Attorney for the Middle District of Pennsylvania, at 240 West Third Street, Williamsport, PA 17701, a true and correct copy of the Emergency Motion for Compassionate Release, on this 24th day of December, 2020, by placing same in the United States Mail, postage prepaid.

/s/ *Antoine Paris Davis*

**Antoine Paris Davis**

# ATTACHMENT A

BP-A0148
JUNE 10

**INMATE REQUEST TO STAFF** CDFRM

**U.S. DEPARTMENT OF JUSTICE**                    **FEDERAL BUREAU OF PRISONS**

| TO:(Name and Title of Staff Member) DAVID ORTIZ, WARDEN | DATE: 9/1/2020 |
|---|---|
| FROM: ANTOINE P. DAVIS | REGISTER NO.: 74600-067 |
| WORK ASSIGNMENT: | UNIT: |

SUBJECT: (Briefly state your question or concern and the solution you are requesting.
Continue on back, if necessary.  Your failure to be specific may result in no action being
taken.  If necessary, you will be interviewed in order to successfully respond to your
request.

As you are aware from my medical conditions which include COVID-19 risk factors, I am at risk of dying if I catch the disease. As you are also aware, I have now sustained permanent injury because this institution did not promptly or properly provide care after I sustained a work related injury. Therefore, I am requesting compassionate release under 18 USC 3582(c)(1)(A). (Do not write below this line)

DISPOSITION:

| Signature Staff Member | Date |
|---|---|

Record Copy - File; Copy - Inmate

PDF                           Prescribed by P5511

This form replaces BP-148.070 dated Oct 86
and BP-S148.070 APR 94

FILE IN SECTION 6 UNLESS APPROPRIATE FOR PRIVACY FOLDER        **SECTION 6**

# ATTACHMENT B

November 9, 2020

Mr. Michael Carvajal
Director
Federal Bureau of Prisons
320 First Street N.W.
Washington, DC 20534

Dear Mr. Carvajal,

I write today to express grave concerns regarding the Bureau of Prison's (BOP's) inadequate protocols for COVID-19 testing and transfer of incarcerated individuals. Specifically, we are concerned that BOP recently transferred COVID-19 positive incarcerated individuals to FCI Fort Dix, which is now facing a second, and potentially severe, COVID-19 outbreak. We strongly urge you to cease the recently enacted moratorium on transferring incarcerated individuals to FCI Fort Dix to also cease at FCI Fairton, and that you continue the moratorium until BOP resolves the new COVID-19 outbreak at the facility and formulates an effective and accurate testing strategy to protect both staff and incarcerated individuals from future outbreaks.

Prior to October, BOP had not reported any recent COVID-19 cases among incarcerated individuals or staff at FCI Fort Dix. However, in early October, BOP reportedly alerted staff at FCI Fort Dix that their facility would begin receiving transfers of incarcerated individuals from FCI Elkton in Ohio. FCI Elkton has been severely affected by COVID-19, with nearly 1,000 known cases among incarcerated individuals and staff to date.[1] Despite the known risks of transferring incarcerated individuals during a pandemic,[2] BOP transferred more than 150 incarcerated individuals from FCI Elkton to FCI Fort Dix in recent weeks. On October 26, 2020, BOP confirmed in an email to congressional staff that 54 incarcerated individuals tested positive for COVID-19 in the 5812 unit of FCI Fort Dix, which is reportedly the unit into which the individuals from FCI Elkton were transferred. On October 29, 2020, BOP confirmed that five incarcerated individuals from FCI Elkton who were transferred to FCI Fort Dix on the evening of October 26, 2020 had tested positive for COVID-19 upon arrival and were placed in isolation.

While the situation is rapidly evolving, it is clear that BOP does not have an effective tool to screen COVID-19 positive incarcerated individuals are not transferred between facilities. This outbreak is now spreading within FCI Fort Dix, and as of November 9, 2020, there are at least 24 active COVID-19 cases among incarcerated individuals and ten active COVID-19 cases among staff members.[3] The FCI Fort Dix employees responsible for transporting the FCI Fort Dix transfers may have been exposed to COVID-19 in transit. All incarcerated individuals and

[1] _____
[2] _____ https://_____.covid19cases.tsv
[3] _____ https://_____

FCI Fort Dix and the surrounding communities are now at increased risk for contracting [...] with potentially deadly consequences.

In light of the rapidly escalating crisis at FCI Fort Dix, we urge you to immediately test all FCI Fort Dix incarcerated individuals and staff for COVID-19. We appreciate that BOP has instituted a temporary moratorium on transfers into FCI Fort Dix until November 23, 2020. However, rather than setting an arbitrary date, we urge BOP to halt all transfers to FCI Fort Dix until BOP institutes an effective and accurate testing strategy for incarcerated individuals and staff and there [...] no active cases at the facility. Given that BOP does not currently have an effective strategy for safely transferring incarcerated individuals, we also request that BOP extend this moratorium to New Jersey's other facility, FCI Fairton.

In order for an effective COVID-19 testing strategy, we strongly urge you to institute a plan to test all FCI Fort Dix incarcerated individuals and staff on at least a biweekly basis. FCI Fort Dix's staff members are frontline federal workers, and it is unacceptable that BOP is not providing them with regular COVID-19 testing. By failing to test FCI Fort Dix's employees, BOP is needlessly endangering not only these employees but their families, all incarcerated individuals, and the entire surrounding community.

Additionally, we request that BOP provide detailed answers to the following questions no later than Monday, November 30, 2020:

1. Will BOP commit to halting all transfers of incarcerated individuals to FCI Fort Dix and FCI Fairton until the current COVID-19 outbreak at the facility has ended and there are no active cases among incarcerated individuals or staff?

2. During the FCI Fort Dix transfer moratorium, will BOP also commit to halting any transfers of incarcerated individuals to FCI Fairton?

3. What is BOP's plan for addressing the current COVID-19 outbreak at FCI Fort Dix, including information on the [...] safety protocols, notifications to staff and incarcerated individuals, as well as any future outbreaks at FCI Fort Dix and ensuring the safety of incarcerated individuals and staff?

4. In an email to congressional staff, BOP indicated that incarcerated individuals who had [...] positive for COVID-19 in the previous 90 days and were asymptomatic were not [...] tested before being transferred from FCI Elkton to FCI Fort Dix. Can you verify that all FCI [...] incarcerated individuals who previously tested positive for COVID-19 [...] received negative COVID-19 test results before their transfer to FCI Fort Dix? Please [...] in detail, the process for testing the FCI Elkton incarcerated individuals prior to [...] transfer to FCI Fort Dix.

5. What is BOP's overall, long-term COVID-19 testing strategy for FCI Fort Dix? How will BOP update the COVID-19 testing strategy at FCI Fort Dix in light of the recent outbreak?

6. Will BOP begin providing COVID-19 testing to FCI Fort Dix employees? If so, how [...] will such testing occur?

7. How has FCI Fort Dix spent the CARES Act (P.L. 116-136) funding that has been allocated the facility? Please provide a detailed breakdown.

Thank you for your prompt consideration of this urgent matter.

Sincerely,

Robert Menendez
United States Senator

Cory A. Booker
United States Senator

Frank Pallone, Jr.
Member of Congress

Bill Pascrell, Jr.
Member of Congress

Albio Sires
Member of Congress

Donald M. Payne, Jr.
Member of Congress

Donald Norcross
Member of Congress

Bonnie Watson Coleman
Member of Congress

Josh Gottheimer
Member of Congress

Mikie Sherrill
Member of Congress

Andy Kim
Member of Congress

Tom Malinowski
Member of Congress

Vene Paris Davis
Reg. No. 74600-067
FCI Fort Dix
P.O. Box 2000
Joint Base MDL, NJ 08640

United States District Court
Middle District of Pennsylvania
235 North Washington Ave
Scranton, PA 18501

REC'D
SCR
JAN 11 2021
PER
DEPUTY CLERK

FOREVER
851801214191301
USA

FOREVER
851801214191301
USA