# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 4:16-CR-00006-2 |
| v. | (Chief Judge Brann) |
| ANTOINE PARIS DAVIS, | |
| Defendant. | |

## MEMORANDUM OPINION

### NOVEMBER 5, 2021

## I.    BACKGROUND

In 2016, Antoine Paris Davis was charged with conspiracy to distribute controlled substances, in violation of 21 U.S.C. § 846 (Count 1), and possession with intent to distribute controlled substances, in violation of 21 U.S.C. § 841 (a)(1) (Count 5).[1] Davis thereafter proceeded to a jury trial.

At trial, the Government presented evidence that, beginning in or around June 14, 2014, Davis and codefendant Raheem Ruley agreed to traffic heroin and cocaine to individuals in the Williamsport, Pennsylvania area. Davis and Ruley used cell phones to take customer orders and then met the customers at prearranged locations to deliver heroin and cocaine. Davis rented a residence at 321 Tinsman Avenue in Williamsport (the "Residence") and stayed with his girlfriend in a bedroom on the second floor, while Ruley stayed in a different room at the Residence.[2] Two safes

---

[1]    Doc. 1.

[2]    Doc. 170 at 80-81; Doc. 171 at 46, 67-69, 71; Doc. 172 at 8-11.

were maintained at the Residence, with one being located in Davis' room and used by Davis, while Ruley used a safe that was located in a hallway closet; those safes contained money, heroin, and cocaine.[3]

The case against Davis arose when, on June 3, 2015, Pennsylvania State Police (PSP) trooper Ryan Stillman was informed by Darrell Kirsch that Kirsch could buy two "eight-balls"[4] of cocaine from an individual known as "Ant"[5] for $400.[6] Kirsch texted "Ant's" cell phone to buy an eight-ball, and Ruley directed Kirsch to a specific Taco Bell.[7] When the Kirsch and an undercover PSP trooper (the "Trooper") arrived at the location, Ruley entered the back seat of their vehicle and provided Kirsch with cocaine in exchange for $400 in prerecorded funds.[8] Shortly after the transaction was completed, law enforcement observed Ruley enter the Residence, and observed Davis on the porch of that location.[9]

On June 10, 2015, the Trooper contacted Ruley's cell phone and arranged to meet once again to buy cocaine.[10] The Trooper drove to a meeting location and picked up Ruley; Ruley then sold the Trooper two eight-balls in exchange for $400

---

[3]  Doc. 172 at 11, 20-21, 80-81, 116-30.

[4]  Kirsch testified that an eight-ball is 3.5 grams of cocaine, or one-eighth of an ounce. Doc. 171 at 52.

[5]  Witnesses identified Ant as Davis. Doc. 171 at 182; Doc. 172 at 151-52. Additionally, several text messages sent to Davis' cell phone refer to Davis as "Ant" and messages from Ruley's girlfriend to that cell phone asked Ant to give "Raheem" a ride and to retrieve "Raheem stuff" from her house. Doc. 173 at 46-47, 99-100.

[6]  Doc. 170 at 40-43.

[7]  *Id.* at 46-49.

[8]  *Id.* at 47-48.

[9]  *Id.* at 52-53, 57-61, 68-70.

[10]  *Id.* at 61-63.

in prerecorded funds.[11] A few days later, Ruley and the Trooper exchanged text messages—and later a phone call—wherein Ruley confirmed that he could sell the Trooper seven eight-balls for $900.[12] The Trooper picked up Ruley on June 16, 2015, and Ruley provided the Trooper with two bags of cocaine in exchange for $900 in pre-recorded money.[13] After that transaction was completed, Ruley was arrested following a lengthy foot chase.[14]

PSP simultaneously executed a search warrant on the Residence.[15] Upon entering the Residence, Davis was found in the living room and was in possession of a key to the Residence.[16] PSP seized Ruley's wallet from a drawer in the kitchen; the wallet contained $380 in cash and Ruley's Pennsylvania identification card.[17] In the same drawer as the wallet, investigators recovered plastic bags containing cocaine base and vials of marijuana.[18]

From the hallway safe PSP recovered approximately four ounces of heroin, approximately eleven grams of cocaine, along with packaging materials and a digital scale.[19] The heroin was in a plastic container and consisted of multiple sets of blue packets of heroin bundled with black rubber bands and a plastic bag containing

---

[11]  *Id.* at 63-64.
[12]  *Id.* at 75-78.
[13]  *Id.* at 77-78.
[14]  Doc. 171 at 60-62.
[15]  Doc. 172 at 114.
[16]  Doc. 170 at 79-80.
[17]  Doc. 172 at 76-77, 115-16.
[18]  *Id.*
[19]  *Id.* at 116-30.

loose, unpackaged bulk heroin.[20] The safe also contained common packaging materials, including a razor blade typically used to break up drugs, a section of drinking straw with a tapered tip commonly used to scoop heroin into small packets, and small black rubber bands used to wrap heroin packets into bundles.[21]

In Davis' bedroom PSP located a safe that contained approximately $1,000 and a small amount of cocaine.[22] In Davis' bedroom law enforcement recovered documents bearing Davis' name, a metal grinder which is typically "used to grind up marijuana," as well as a razor blade and small black rubber bands commonly used to wrap heroin packets into bundles.[23]

Inside the residence, investigators also recovered prerecorded money used by the Trooper to purchase cocaine from Ruley on June 10, 2015, although law enforcement could not confirm precisely where in the Residence the currency was found.[24] Inside Ruley's bedroom, law enforcement found two digital scales, bullets, and papers in the name of a person identified as a former occupant of the premises.[25] A PSP laboratory analysis confirmed that the substances seized during the search consisted of approximately 95 grams of cocaine, 133 grams of heroin, and 20 grams of marijuana.[26]

---

[20]   *Id.* at 121-22.
[21]   *Id.* at 120-21, 128-29.
[22]   *Id.* at 79-80; Doc. 173 at 19-23.
[23]   Doc. 172 at 79, 120-21; Doc. 173 at 19-21, 24.
[24]   *Id.* at 34-36.
[25]   Doc. 172 at 77-83.
[26]   *Id.* at 84-86, 175-78, 186-87.

PSP also recovered several cell phones in Davis' room, and one of those phones contained a phone number for "Scrizz;" this phone number was the same number that the Trooper called to purchase cocaine from Ruley.[27] That cell phone also contained numerous text message exchanges with "Scrizz's" phone number during the same time period as the deliveries of cocaine from Ruley to the Trooper,[28] along with text messages to and from other individuals wherein Davis discussed the availability of heroin, Percocet, marijuana, and heroin.[29] In the text messages on that phone, Davis asked his customers—including Jye Smith—for money owed for drugs that he had "fronted" to them on credit.[30]

At trial, Kirsch confirmed that he had previously purchased cocaine and cocaine base from Ruley, and Ruley had stated that he also sold heroin.[31] Jye Smith testified that he purchased cocaine from Davis.[32] Eventually, Smith accumulated a debt of $1,800 that he owed to Davis for that cocaine.[33] Jacob Daniel Kreamer similarly testified that he purchased cocaine from Davis, and that Davis had offered to sell Kreamer heroin.[34] Kreamer eventually gave his vehicle to Davis in exchange for cocaine[35] and, in several text messages exchanged with Davis' phone, Kreamer

---

[27]  *Id.* at 79-80, Doc. 173 at 46-49.
[28]  Doc. 173 at 46-49.
[29]  *Id.* at 62-65, 73-74, 78, 88-89, 92; Doc. 174 at 22-23.
[30]  Doc. 173 at 54-57, 71-75.
[31]  Doc. 171 at 51-55.
[32]  *Id.* at 182-85.
[33]  *Id.* at 186.
[34]  Doc. 172 at 155-56, 168-69.
[35]  *Id.* at 150-53.

and Davis discussed changing the registration sticker and vehicle title for that vehicle.[36]

Dana Rockwell testified that she purchased bricks[37] of heroin from Davis on three separate occasions.[38] Although Rockwell typically purchased her heroin from an individual whom she knew at "Cat," when Cat was unavailable, he directed Rockwell to purchase heroin from Davis.[39] The heroin that Rockwell purchased from Davis was packaged in the same manner and cost the same amount as the heroin from Cat, although the bags were sometimes folded differently.[40]

At the conclusion of the five-day jury trial, Davis was convicted of both counts.[41] The Court thereafter sentenced Davis to a total term of 144 months' imprisonment.[42] On appeal, the United States Court of Appeals for the Third Circuit affirmed Davis' convictions.[43]

In February 2020, Davis filed a timely 28 U.S.C. § 2255 motion challenging his convictions based on several alleged issues.[44] First, Davis claims that the Government engaged in prosecutorial misconduct when it intermingled money seized from different parts of the Residence and purportedly asserted that it had

---

[36] *Id.* at 154; Doc. 173 at 76-77.
[37] A brick is fifty bags of heroin. Doc. 171 at 219.
[38] *Id.* at 218-19.
[39] *Id.* at 217-19.
[40] *Id.* at 220, 225-27.
[41] Doc. 135.
[42] Doc. 198.
[43] *United States v. Davis*, 728 F. App'x 165, 168 (3d Cir. 2018), *cert. denied*, 139 S. Ct. 1167 (2019).
[44] Doc. 208.

discovered all of the funds in Davis' room.[45] Second, and relatedly, Davis contends that his attorney was ineffective for failing to object to the Government's exhibits related to the seized money, as those exhibits were tainted by the intermingled nature of the money.[46] Third, and again relatedly, Davis asserts that this Court erred in permitting the introduction of that "false and tainted evidence" at trial, and that the introduction of this evidence violated Davis' due process rights.[47]

Fourth, Davis contends that he received ineffective assistance of counsel due to trial counsel's performance before and during trial. Specifically, trial counsel purportedly informed Davis prior to trial that his clients could not receive a fair trial before this Court because, previously, trial counsel "and Judge Matthew Brann were against each other . . . and trial counsel . . . won" and because the Court had no experience in criminal matters.[48] Furthermore, trial counsel failed to object to the "tainted" currency, failed to inspect physical evidence, and refused to pursue issues of inconsistent statements made by Government witnesses.[49] During trial, counsel further purportedly informed Davis that he would not continue to represent Davis, and that he hoped that Davis would be convicted.[50]

---

[45] *Id.* at 4-5, 7-10. Davis raises substantially the same claims and arguments in both Ground One and Ground Three of his § 2255 motion and those claims are thus treated as a single claim for purposes of this Memorandum.

[46] *Id.* at 6-7.

[47] *Id.* at 11-12; Doc. 208-1 at 3.

[48] Doc. 208 at 13.

[49] *Id.* at 13-14.

[50] *Id.* at 14.

Fifth, Davis asserts that the verdict was against the weight of the evidence for two reasons. Davis contends that the evidence did not establish the existence of a conspiracy, as Ruley testified that: he never reached an agreement with Davis to distribute drugs; never gave any money from the sale of drugs to Davis; and Davis did not have access to the safe that contained the drugs that police seized from the home.[51] Davis further argues that the indictment alleged that the conspiracy continued until January 14, 2016, but Davis was arrested on June 16, 2015.[52]

Sixth, Davis alleges that the Court erred in permitting the Government to introduce Ruley's affidavit after it denied Davis' request to introduce that affidavit.[53] Seventh, Davis argues that this Court lacked personal and subject matter jurisdiction over Davis, as nothing in the arrest warrant contained information demonstrating that Davis had committed a federal crime.[54] Eighth, Davis asserts that he was arrested in violation of the Fourth Amendment's prohibition against unreasonable seizures, as there was no arrest warrant and no probable cause to make the arrest since Ruley was already in custody.[55]

Ninth, Davis alleges that his rights were violated when he was prohibited from countering certain Government evidence and from playing a recorded phone

---

[51] *Id.* at 16.
[52] *Id.*
[53] *Id.* at 17.
[54] *Id.* at 18.
[55] *Id.* at 19.

conversation.[56] Tenth, Davis alleges that there was a "tainted jury selection" which resulted in no African Americans being impaneled on the jury.[57] Eleventh, Davis contends that the Government violated his Sixth Amendment rights by failing to apprise him of the charges against him.[58]

Twelfth, Davis argues that the Court violated the Confrontation Clause when it denied Davis' motion to subpoena Trooper Russell Burcher, who purportedly made multiple false statements and misrepresentations to the grand jury in this matter, which undermined the Indictment.[59] Thirteenth, the Court allegedly erred in relying on false statements and misrepresentations at sentencing to conclude that an enhancement for obstruction of justice was warranted.[60] Fourteenth, Davis asserts that the Court erred in denying his motion to suppress evidence, as there was no probable cause to search the Residence.[61] Finally, Davis argues that his appellate counsel was ineffective for failing to raise the aforementioned issues during Davis' direct appeal.[62]

---

[56] *Id.* at 20. Although Davis asserts that his due process rights were violated by the failure to play recorded phone conversations, he alleges not that he was denied the right to play those conversations, but that trial counsel refused to request that they be played for the jury. The Court therefore construes this claim as alleging ineffective assistance of counsel, rather than a due process violation.

[57] Doc. 208 at 21.

[58] *Id.* at 22.

[59] *Id.* at 23-24.

[60] *Id.* at 25; Doc. 208-1 at 1.

[61] *Id.* at 2.

[62] *Id.*

Davis submitted a brief in support of his motion,[63] and the Government has filed a brief in opposition to the motion, arguing that Davis did not receive ineffective assistance of counsel, and his claims are otherwise without merit.[64] Davis has filed a reply brief, and the matter is now ripe for disposition.[65] For the reasons discussed below, the Court will deny Davis' motion.

## II.   DISCUSSION

### A.   Non-Ineffective Assistance of Counsel Claims

As an initial matter, most of the claims that Davis raises in his § 2255 motion could have been raised in a direct appeal but were not. It is well established that "claims not raised on direct appeal may not be raised on collateral review unless the petitioner shows cause and prejudice."[66] The Third Circuit has concluded that, where movants establish ineffective assistance of appellate counsel, "they have . . . demonstrated the cause and prejudice that will excuse the procedural default that resulted from counsel's failure to [raise certain] challenge[s] . . . on direct appeal."[67]

Here, every claim raised—other than claims of ineffective assistance of counsel—could have been raised in direct appeal and, consequently, may not be considered here absent cause and prejudice. The only cause to which Davis cites for

---

[63]   Doc. 211.
[64]   Doc. 233.
[65]   Doc. 241.
[66]   *Massaro v. United States*, 538 U.S. 500, 504 (2003). *See also United States v. Travillion*, 759 F.3d 281, 288 n.11 (3d Cir. 2014) (noting that "issues which should have been raised on direct appeal may not be raised with a § 2255 motion").
[67]   *United States v. Mannino*, 212 F.3d 835, 845 (3d Cir. 2000).

his failure to raise these claims on appeal is his appellate counsel's alleged ineffectiveness. Because, as discussed below, the claim of ineffective assistance of appellate counsel is without merit, the Court concludes that Davis' claims, other than those alleging ineffective assistance of counsel, are procedurally defaulted. However, even absent Davis' procedural default, his claims are without merit.

### 1. Claims Related to Intermingling of Money

The Court first addresses Davis' claims that the Government engaged in prosecutorial misconduct when it intermingled money seized from different parts of the Residence, that this Court erred in permitting the introduction of this "false and tainted evidence" at trial, and that Davis' due process rights were violated by the introduction of that evidence at trial.[68]

As Davis correctly notes, following a search of the Residence, law enforcement seized currency from several locations within that property, but mixed the currency together without documenting from exactly where in the home the currency was seized.[69] Former PSP trooper John Whipple testified that standard procedure is to send currency "to the property record by denomination. So when we search a residence, a car or an individual, it gets put on the property record as ones, fives, tens, twenties, fifties, hundreds, whatever the denomination is, no matter

---

[68] Doc. 208 at 4-5, 7-12; Doc. 208-1 at 3. Davis also claims that law enforcement planted money and cocaine in his room. Doc. 208-1 at 3. Davis provides no evidence to support this assertion, and there is no evidence in the record that would remotely support his allegation. The Court therefore finds this claim to be without merit.

[69] *Id.* at 5; Doc. 173 at 35.

where it was taken from."[70] Whipple acknowledged that he could not determine "from exactly where in the house [the currency was] seized" and was certain only that the currency did not come from Hakeem Handy's person.[71] Rather, the currency was seized from an upstairs safe and Ruley's wallet in the kitchen.[72]

During cross-examination Whipple was asked whether the currency "was all mixed together with all of the money in the house from the safe in Mr. Davis's room and from Mr. Ruley's wallet" and Whipple confirmed that the currency was indeed mixed together, including with currency seized from Hakeem Price. He noted that the currency was "[s]tacked by denomination and together and I removed the twenties, fifties and hundreds because that's what was utilized during the controlled purchase."[73]

Davis provides no evidence that the Government actually tampered with or tainted physical evidence when it intermingled the funds seized from Davis' house. Rather, the Government and its witnesses candidly acknowledged that the currency was mingled based upon PSP standard procedures, and that they could no longer determine which currency was seized from Ruley's wallet and which currency was seized from Davis' safe.[74] There is no evidence that the Government engaged in

---

[70] Doc. 173 at 35.

[71] *Id.* at 34.

[72] *Id.* at 35-36.

[73] *Id.* at 36.

[74] Davis emphasizes that Ruley testified that he placed the money that he received from the controlled purchases in his wallet. Doc. 208 at 5, 9. Although Ruley testified that he "believe[d] [he] put all of the money that [he] received from [the undercover sales] in [his] wallet," is was

"deliberate misconduct" or that Davis was prejudiced in any way from the intermingling of that currency.[75] Consequently, the Court cannot conclude either that the Government tampered with evidence, or that the prosecution engaged in misconduct when it presented that evidence to the jury. Similarly, given that there was nothing improper about the evidence presented, there is no basis to conclude that this Court erred in permitting the Government to introduce that evidence, or that Davis' due process rights were violated by the introduction of that evidence. Davis' claims related to the handling of the currency are therefore without merit.

### 2.     Weight of the Evidence

Next, Davis argues that, for two reasons, there was insufficient evidence to support the verdict. First, he asserts that, based upon Ruley's testimony, the evidence did not establish the existence of a conspiracy.[76] Second, he contends that the indictment alleged that the conspiracy continued until January 14, 2016, but Davis was arrested on June 16, 2015.[77] This claim fails for two reasons.

---

possible that, had he owed Davis "any money, [he] may have [given the marked bills] to [Davis] not knowing." Doc. 172 at 28. Thus, not only did Ruley condition his statement that he placed the bills in his wallet, but he acknowledged that he may have provided some of those bills to Davis. Ruley's statement is therefore of little assistance to Davis.

[75] *Gov't of Virgin Islands v. Fahie*, 419 F.3d 249, 254 (3d Cir. 2005). Although it is possible that Davis suffered some prejudice, it is equally likely that Davis benefitted from the comingling. That comingling allowed Davis the opportunity to argue that that none of the marked currency was found in his safe, even if the Government had in fact seized some of the marked currency from the safe.

[76] Doc. 208 at 16.

[77] *Id.*

As an initial matter, it is well established that claims related to insufficiency of the evidence are "not cognizable under section 2255."[78] Accordingly, Davis' claim—which invites the Court to improperly "to usurp the role of the jury by weighing credibility and assigning weight to the evidence"[79]—must be denied.

Moreover, even if the Court were to consider the merits of Davis' claim, it would fail, as there is ample evidence that Davis participated in a conspiracy to distribute controlled substances. This Court may find that a "jury's verdict is contrary to the weight of the evidence only if it believes that there is a serious danger that a miscarriage of justice has occurred—that is, that an innocent person has been convicted."[80] In evaluating the weight of the evidence, a court must "exercise[] its own judgment in assessing the Government's case."[81]

An independent evaluation of the record leads the Court to conclude that the evidence sufficiently establishes that Davis participated in a conspiracy to distribute controlled substances. First, Davis' cell phone contained numerous messages between Davis and his customers, as well as messages between Davis and Ruley during the time that Ruley was conducting sales of controlled substances to the Trooper.[82] Second, Ruley and Davis shared a residence where various controlled

---

[78] *United States v. Norton*, 539 F.2d 1194, 1195 (8th Cir. 1976). *See also United States v. Berry*, 624 F.3d 1031, 1038 (9th Cir. 2010) (holding movant's "evidence-based" claim that "called into doubt the overall weight of the evidence against him" not cognizable in § 2255 motion).

[79] *United States v. Wise*, 515 F.3d 207, 214 (3d Cir. 2008).

[80] *United States v. Johnson*, 302 F.3d 139, 150 (3d Cir. 2002) (internal quotation marks omitted).

[81] *Id.*

[82] Doc. 173 at 46-49, 54-57, 62-65, 71-75, 78, 88-89, 92; Doc. 174 at 22-23.

substances—some packaged for distribution—were found throughout the home along with paraphernalia associated with drug trafficking, along with money that Ruley had received from conducting controlled sales of narcotics to the Trooper.[83]

Third, one individual witnessed Davis at a stash house where several women were "bagging up heroin."[84] Fourth, on several occasions when Ruley was unable to provide a customer with heroin, he would arrange for that customer to meet Davis and purchase heroin from Davis.[85] This establishes a direct connection between Ruley and Davis and establishes the existence of a conspiracy between the two. Finally, Rockwell testified that the heroin which she purchased from Davis was packaged in the same manner and cost the same amount as the heroin that was sold by Ruley, although the bags were sometimes folded differently.[86]

Although it is true, as Davis notes, that Ruley testified that he and Davis did not work together and instead were akin to "independent contractor[s]" who "did [their] own thing,"[87] ample evidence established that Davis participated in a drug trafficking conspiracy, and the Court cannot conclude that the verdict was against the weight of the evidence. Accordingly, Davis' claim fails both as a procedural matter and on its merits.

---

[83]  Doc. 172 at 76-83, 115-30; Doc. 173 at 19-24, 34-36.
[84]  Doc. 171 at 224. This is important because, although Davis focuses on the evidence supporting a conspiracy with Ruley, the Indictment charges Davis with conspiring not just with Ruley, but also with "other persons, known and unknown to the Grand Jury." Doc. 1 at 2.
[85]  Doc. 171 at 217-19.
[86]  *Id.* at 220, 225-27.
[87]  Doc. 172 at 41.

### 3.  Introduction of Affidavit

Davis next asserts that the Court erred in permitting the Government to introduce Ruley's affidavit after it denied his request to introduce that affidavit.[88] Prior to trial, Davis filed a motion *in limine* to submit an "affidavit of truth" wherein Ruley stated that he and Davis never agreed to distribute controlled substances, and that Davis was not involved in any drug activity.[89] This Court denied that motion after concluding that the statement was hearsay and was inherently untruthful.[90] However, the affidavit became relevant to demonstrate that Davis had drafted the document in an attempt to undermine the case against him, and was made relevant for that purpose when Ruley admitted under oath that he and Davis had "agreed[] to sell and deliver heroin and cocaine to drug users in Williamsport."[91] Consequently, Davis' claim is without merit and will be denied.

### 4.  Subject Matter Jurisdiction

Davis next contends that the Court lacked personal and subject matter jurisdiction over Davis, as nothing in the arrest warrant contained information demonstrating that he had committed a federal crime.[92] However, the Indictment

---

[88]  Doc. 208 at 17.
[89]  Doc. 111.
[90]  Doc. 116.
[91]  Doc. 172 at 27; *see id.* at 23-30.
[92]  Doc. 208 at 18.

clearly alleges that Davis violated federal controlled substance laws.[93] Moreover, the affidavit in support of a search warrant for the Residence—upon which Davis bases his entire argument—provides a clear nexus between the Residence and drug trafficking, which is a federal crime.[94] Plainly then, the Court had jurisdiction over this matter, and Davis' claim is without merit.

### 5.    Probable Cause for Search Warrant and Arrest

Davis also asserts that he was arrested in violation of the Fourth Amendment's prohibition against unreasonable seizures, as there was no arrest warrant and no probable cause to arrest him since Ruley was already in custody.[95] He further contends that the Court erred in denying his motion to suppress evidence, as there was no probable cause to search the Residence.[96] With respect to Davis' arrest, even ignoring the ample evidence of Davis' drug trafficking, law enforcement discovered cocaine in a safe in Davis' room—a safe to which only Davis had access.[97] This fact alone provided probable cause to arrest Davis. As to the search of the Residence, in denying Ruley's motion to suppress evidence, the Court explained in detail that

---

[93]  Doc. 1. The clarity of the Indictment also fatally undermines Davis' claim that the Government violated his Sixth Amendment rights by failing to apprise him of the charges against him. Doc. 208 at 22.

[94]  Doc. 208-3 at 6-12.

[95]  Doc. 208 at 19.

[96]  208-1 at 2.

[97]  Doc. 172 at 79-80; Doc. 173 at 19-23.

probable cause supported the search and, for the reasons discussed in the Court's April 15, 2016 Memorandum Opinion, this claim is likewise without merit.[98]

### 6.    Claim Related to Jury Composition

Davis next argues that there was a "tainted jury selection" which resulted in no African Americans being impaneled on the jury.[99] The law is clear "that the American concept of the jury trial contemplates a jury drawn from a fair cross section of the community."[100] Accordingly, while "[d]efendants are not entitled to a jury of any particular composition," the "venires from which juries are drawn must not systematically exclude distinctive groups in the community and thereby fail to be reasonably representative thereof."[101] The United States Supreme Court has held that

> to establish a prima facie violation of the fair-cross-section requirement, the defendant must show (1) that the group alleged to be excluded is a "distinctive" group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process.[102]

---

[98]   Doc. 56 at 9-12.
[99]   Doc. 208 at 21.
[100]  *Taylor v. Louisiana*, 419 U.S. 522, 527 (1975).
[101]  *Id.* at 538.
[102]  *Duren v. Missouri*, 439 U.S. 357, 364 (1979).

If the defendant satisfies his burden, the Government then bears "the burden of justifying this infringement by showing attainment of a fair cross section to be incompatible with a significant state interest.[103]

Here, Davis' cursory argument—consisting of a single line—fails to establish any of those three elements. Even assuming that African Americans are a distinctive group within the Williamsport division of the Middle District of Pennsylvania, and that their representation in the jury venire is not fair and reasonable in relation to the number of African Americans in the community, there is no evidence that this underrepresentation is due to systematic exclusion of African Americans in the jury-selection process. To the contrary, the veniremen within this District are chosen entirely at random. Consequently, this claim also fails.

### 7.    Confrontation Clause Claim

Davis next asserts that the Court violated the Confrontation Clause when it denied Davis' subpoena of Trooper Russell Burcher, who purportedly made multiple false statements and misrepresentations to the grand jury in this matter and thereby undermined the Indictment.[104] During trial, Davis sought to subpoena Burcher, arguing that testimony from Burcher might reveal "discrepancies between Mr. Burcher's grand jury testimony and the evidence that may be presented at trial."[105]

---

[103] *United States v. Savage*, 970 F.3d 217, 254 n.31 (3d Cir. 2020) (internal quotation marks omitted).
[104] Doc. 208 at 23-24.
[105] Doc. 171 at 10.

In addressing that motion, the Court explained that "[t]he purpose of the trial is to ascertain Mr. Davis's guilt or innocence as to the charged offense conduct, not to second-guess the grand jury's determinations."[106] The Court then concluded that any testimony from Burcher would not be material, and would instead "amount more to a fishing expedition than a calculated exploration of pertinent investigative facts."[107] This Court further determined that, after reviewing Burcher's grand jury testimony, "the record plainly lacks any evidence of impropriety, falsified statements or substantial inconsistencies"[108] and was instead "consistent with Trooper Kelley's testimonial account at trial."[109] The Court therefore denied that motion.

Davis seeks to relitigate his prior motion and the Court's decision denying that motion without providing any proper basis to reconsider that ruling. For the reasons set forth in the Court's prior ruling denying the motion to subpoena Burcher, the Court again concludes that Davis was not entitled to a subpoena to compel Burcher's testimony. Because that subpoena was properly denied based on the Federal Rules of Evidence and well-establish Supreme Court and Third Circuit precedent, that denial did not violate Davis' constitutional rights.

---

[106] *Id.* at 12.
[107] *Id.* at 14; *see id.* at 12-16.
[108] *Id.* at 14.
[109] *Id.* at 15.

### 8.    Sentencing Enhancement for Obstruction of Justice

Davis also seeks to relitigate the Court's decision to apply a sentencing enhancement for obstruction of justice.[110] Specifically, Davis asserts that the Court allegedly erred in relying on false statements and misrepresentations to conclude that such an enhancement was warranted.[111] The Court considered, and rejected, any argument that the enhancement was improper when Davis' attorney objected to that enhancement prior to sentencing.[112]

The Court determined that Davis had obstructed justice or impeded the administration of justice based on two key facts. First, during a recorded phone call between Ruley and his mother while Ruley was incarcerated, Ruley made clear that Davis had asked Ruley to take all responsibility for the drugs recovered at the Residence.[113] Although Davis contests that Ruley ever stated that it was actually Davis who applied that pressure,[114] the recording speaks for itself, and Davis points to nothing to undermine the conclusion that the pressure placed on Ruley originated from Davis. Second, Davis drafted, and had Ruley sign, an affidavit that attempted to exonerate Davis for his criminal behavior—a document that Ruley later confirmed was false.[115] This evidence supported the conclusion that a sentencing enhancement

---

[110]  Doc. 208 at 25; Doc. 208-1 at 1

[111]  Doc. 208 at 25; Doc. 208-1 at 1.

[112]  Doc. 197 at 4-7.

[113]  *Id.* at 6.

[114]  Doc. 208 at 25.

[115]  Doc. 197 at 6. Davis takes issue with the Court's statement that Davis introduced the affidavit as substantive evidence at trial. Doc. 208 at 25. This scrivener's error—the Court should have

for obstruction of justice was warranted, and Davis again points to nothing that would warrant a different conclusion. Consequently, this claim will also be denied.

## B.   Ineffective Assistance of Counsel Claims

Lastly, Davis raises a series of claims alleging that he received ineffective assistance of counsel. "In *Strickland v. Washington,* 466 U.S. 668 (1984), the Supreme Court established a two-part test to evaluate ineffective assistance of counsel claims."[116] "The first part of the *Strickland* test requires 'showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment.'"[117] In determining whether an attorney's performance is deficient, courts must "determine whether, in light of all the circumstances, the [attorney's] acts or omissions were outside the wide range of professionally competent assistance."[118] As the United States Supreme Court has emphasized:

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable.[119]

---

stated that Davis *attempted* to introduce the affidavit as substantive evidence at trial—has no bearing or impact on the Court's prior analysis. *See* Doc. 111 (motion *in limine* seeking to introduce affidavit as evidence at trial).

[116] *United States v. Bui*, 795 F.3d 363, 366 (3d Cir. 2015).

[117] *Id.* (quoting *Strickland*, 466 U.S. at 687).

[118] *Strickland*, 466 U.S. at 690.

[119] *Id.*

"The second part [of the *Strickland* test] specifies that the defendant must show that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'"[120] "This does not require a showing that counsel's actions more likely than not altered the outcome, but the difference between *Strickland*'s prejudice standard and a more-probable-than-not standard is slight and matters only in the rarest case. The likelihood of a different result must be substantial, not just conceivable."[121] In other words, a movant must establish a "a substantial likelihood" that any errors "changed the outcome of . . . trial."[122]

Davis' first claim of ineffective assistance of counsel—that his attorney was ineffective for failing to object to the Government's exhibits related to the seized currency—may be quickly disposed of.[123] As discussed previously, that evidence was properly admitted at trial, and any objection to the introduction of that evidence would therefore have failed. Consequently, Davis' claim of ineffective assistance of counsel also fails, as "there can be no Sixth Amendment deprivation of effective counsel based on an attorney's failure to raise a meritless argument."[124]

---

[120] *Bui*, 795 F.3d at 366 (quoting *Strickland*, 466 U.S. at 694).

[121] *Harrington v. Richter*, 562 U.S. 86, 111-12 (2011) (internal quotation marks omitted).

[122] *Branch v. Sweeney*, 758 F.3d 226, 238 (3d Cir. 2014).

[123] Doc. 208 at 6-7.

[124] *Bui*, 795 F.3d at 366-67 (internal quotation marks omitted). Moreover, Davis' attorney repeatedly emphasized that the Government did not know from which specific location the buy money was seized, argued that it was seized from Ruley, and asserted that there were

23

Davis next argues that he received ineffective assistance of counsel when his attorney failed to play a recorded phone conversation that, according to Davis, "would have exonerated" him.[125] Davis, however, fails to establish either prong of the *Strickland* standard. Not only does Davis fail to establish that counsel's performance was deficient in failing to play that recording, but he also fails to establish that he suffered any resulting prejudice because, other than a single, conclusory sentence that he would have been exonerated by the recording, Davis does not explain how the phone call would have exonerated him.[126] While Davis asserts that the recording would have contradicted testimony from Ruley's mother,[127] her testimony was relatively inconsequential and, in light of "the powerful and uncontroverted evidence of Davis's drug trafficking,"[128] impeaching her testimony would have had no discernable impact on the trial, meaning that Davis suffered no prejudice from the failure to play that recording.[129]

---

"inconsistencies in the evidence" that should give the jury pause about convicting Davis. Doc. 174 at 134-35. The Court simply cannot conclude that counsel provided deficient advocacy on Davis' behalf, particularly in light of the ample evidence of guilt that counsel was required to surmount to obtain a verdict of not guilty

[125] Doc. 208 at 20.

[126] Notably, Davis' attorney contemplated playing the recorded phone call but, after cross-examining the Government's witness, determined that playing the recorded call was "not necessary." Doc. 171 at 179; *see id.* at 171-79. Counsel made a strategic decision not to play the recording, and Davis points to no evidence that would indicate that counsel's decision fell "outside the wide range of professionally competent assistance.". *Strickland*, 466 U.S. at 690.

[127] Doc. 211 at 2-3.

[128] *Davis*, 728 F. App'x at 168.

[129] *See Sweeney*, 758 F.3d at 238 (noting that a movant must establish a "a substantial likelihood" that any errors "changed the outcome of . . . trial"); *Rolan v. Vaughn*, 445 F.3d 671, 682 (3d Cir. 2006) (stating "in considering whether a petitioner suffered prejudice, the effect of counsel's inadequate performance must be evaluated in light of the totality of the evidence at trial: a verdict or conclusion only weakly supported by the record is more likely to have been

Davis next asserts that he received ineffective assistance of counsel due to counsel's performance before and during trial. Specifically, counsel purportedly informed Davis prior to trial that counsel's clients could not receive a fair trial before this Court because, in a prior proceeding, counsel "and Judge Matthew Brann were against each other . . . and trial counsel . . . won" and because the Court had no experience in criminal matters.[130] During trial, counsel also allegedly informed Davis that he would not continue to represent Davis, and that he hoped Davis would be convicted.[131]

These allegations are entirely without merit. First, it should go without saying that the Court does not act with bias toward any parties who appear before it. Any personal opinions that the undersigned may have regarding an attorney who appears before the Court would not impact the treatment that the attorney receives and would never impact whether the attorney's client receives a fair hearing before this Court.

As to Davis' assertion that counsel stated that he hoped that Davis would be convicted, this assertion is wholly without support, wholly incredible, and runs contrary to counsel's reputation before this Court as an honorable, competent, and diligent attorney. Accordingly, Davis' "presentation of conclusory allegations unsupported by specifics . . . [and] contentions that in the face of the record are

---

affected by errors than one with overwhelming record support" (brackets and internal quotation marks omitted)).
[130] *Id.* at 13.
[131] *Id.* at 14.

wholly incredible" and fail to support his claim of ineffective assistance of counsel.[132] Even if counsel uttered the alleged remarks, there is no indication that Davis suffered any resulting prejudice, or that counsel's beliefs or private statements to Davis impacted counsel's performance or the trial in any way.

Finally, Davis argues that his appellate counsel was ineffective for failing to raise the aforementioned issues during Davis' direct appeal.[133] When considering a claim of ineffective assistance of appellate counsel, the Supreme Court has emphasized that "[e]ffective appellate counsel should not raise every nonfrivolous argument on appeal, but rather only those arguments most likely to succeed."[134] "Declining to raise a claim on appeal, therefore, is not deficient performance unless that claim was plainly stronger than those actually presented to the appellate court."[135] Moreover, "the prejudice prong of a *Strickland* analysis is satisfied if there is a reasonable probability that the result of the *appeal* would have been different had counsel's stewardship not fallen below the required standard."[136]

Considered under this standard, Davis' claim of ineffective assistance of appellate counsel fails. Appellate counsel on direct appeal presented the only

---

[132] *Blackledge v. Allison*, 431 U.S. 63, 74 (1977). *Cf. Damiani v. Duffy*, 754 F. App'x 142, 147 (3d Cir. 2018) (noting in a different context that courts may appropriately discount "testimony—which was largely unsubstantiated by any other direct evidence—[that] was so replete with inconsistencies and improbabilities that no reasonable juror would undertake the suspension of disbelief necessary to credit the allegations" (internal quotation marks omitted)).

[133] *Id.*

[134] *Davila v. Davis*, 137 S. Ct. 2058, 2067 (2017).

[135] *Id.*

[136] *Mannino*, 212 F.3d at 845.

arguably meritorious claims that were available.[137] To so do, appellate counsel necessarily raised "only those arguments most likely to succeed."[138] In light of the overwhelming evidence of Davis' guilt, those claims failed,[139] and it is understandably tempting for Davis to argue that appellate counsel should instead have thrown every possible claim at the proverbial wall to see what may stick. Nevertheless, this Court is mindful that efforts must be taken "to eliminate the distorting effects of hindsight . . . and to evaluate the conduct from counsel's perspective at the time" of the appeal,[140] and counsel's decision to winnow the claims presented on appeal was a reasonable one.

Moreover, as discussed above, the claims that Davis raises here are without merit. Because those "claim[s] [were] meritless . . . [Davis'] appellate counsel could not have been ineffective for failing to raise" them on appeal.[141] Finally, because Davis' claims are without merit, there is no reasonable "reasonable probability that the result of the *appeal* would have been different had counsel[]" raised those issues on appeal[142] and, accordingly, Davis was not prejudiced by appellate counsel's failure to raise them on appeal. Consequently, this claim likewise fails.

---

[137] *Davis*, 728 F. App'x at 167.

[138] *Davila*, 137 S. Ct. at 2067.

[139] *Davis*, 728 F. App'x at 167-68.

[140] *Strickland*, 466 U.S. at 689.

[141] *Williams v. Beard*, 637 F.3d 195, 207 (3d Cir. 2011). *See also Johnson v. Tennis*, 549 F.3d 296, 302 (3d Cir. 2008) ("Given the weakness of Johnson's ineffective assistance of trial counsel claim, it would be difficult to consider appellate counsel unreasonably deficient for failing to raise it").

[142] *Mannino*, 212 F.3d at 845.

### C.     Certificate of Appealability

Because this Court will deny Davis' § 2255 motion, this decision is not appealable unless this Court or a circuit justice issues a certificate of appealability.[143] A certificate of appealability will not issue absent "a substantial showing of the denial of a constitutional right."[144] To satisfy this standard Davis must demonstrate that reasonable jurists would find that the Court's assessment of the constitutional claims is debatable or wrong.[145] This Court concludes that Davis has not met this burden, and the Court therefore declines to issue a certificate of appealability.

## III.   CONCLUSION

For the foregoing reasons, the Court concludes that Davis' 28 U.S.C. § 2255 motion is without merit, and that motion will be denied. The Court will also deny a certificate of appealability.

An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge

---

[143]  28 U.S.C. § 2253(c)(1)(B).

[144]  *Id.* § 2253(c)(2).

[145]  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see Miller-El v. Cockrell*, 537 U.S. 322, 336-38 (2003).